## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRUCE E. LANE**, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL NO.  PJM-04-1051 |
| v. | * | |
| | * | |
| **MICHAEL W. WYNNE,[1] Secretary of** | * | |
| **the Air Force,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

## OPINION

Plaintiff Bruce E. Lane, *pro se*, has filed an Amended Complaint against the Air Force and the American Federation of Government Employees Local 1092 (AFGE), alleging violation of his due process rights, wrongful discharge, breach of contract, and breach of the duty of fair representation.  The Air Force has Filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  AFGE has filed a Motion a Dismiss and a Motion to Stay Scheduling Order.[2]

No hearing is necessary to dispose of this matter.  *See* Local Rule 105.6.  For the reasons set

---

[1] This case was originally styled *Lane v. Loscocco, et al*.  Defendant Charles B. Loscocco was the first individual named in Plaintiff's original Complaint.  He and the other individual Defendants have been dismissed from this action and the Air Force has been substituted as Defendant.  Michael W. Wynne was sworn in as Secretary of the Air Force in November 2005.  Under Fed. R. Civ. P. 25(d)(1), Wynne is automatically substituted as a proper Defendant.

[2] On August 1, 2005, following its Order granting in part and denying in part the Air Force's Motion to Dismiss Lane's original Complaint, the Court issued a Scheduling Order setting forth discovery deadlines.  At that point, Lane had not yet filed his Amended Complaint, which added AFGE as a Defendant.  Thus, AFGE was not a party to the Scheduling Order.  Accordingly, when it moved to dismiss,  AFGE also moved to stay the Scheduling Order so that it could coordinate discovery with the Air Force in the event that the motion to dismiss was denied.  This point is now moot because the Scheduling Order has run its course and the Court, for the reasons set forth in the text, will grant AFGE's Motion to Dismiss.

forth below, the Court will treat the Air Force's Motion to Dismiss as a Motion for Judgment on the Pleadings and GRANT it along with AFGE's Motion to Dismiss.[3]

## I.

This suit arises from Lane's employment as a bartender at the Fox Den Enlisted Club, a non-appropriated fund instrumentality (NAFI)[4] at Andrews Air Force Base in Maryland. Lane, an African American male who is a Vietnam veteran, contends that he was wrongfully discharged on September 6, 2002. His allegations are more fully described in the Court's Opinion of July 29, 2005 and need only be briefly summarized here.

Lane alleges that he had difficulties with his employer beginning in August 2001, when he participated in a Union grievance by writing a letter concerning Charles Loscocco, the Club's Bar Manager and Lane's supervisor. This, Lane contends, led to a formal reprimand on false charges, verbal harassment, a reduction in hours, and eventually, his termination. Lane's original Complaint, which alleged claims under the Federal Tort Claims Act (FTCA), Title VII, violation of his due process rights, and wrongful discharge, named as Defendants Loscocco; Samuel T. Sisco, the Club Manager; Major Nicolas J. DeMarco, Services Squadron Commander of the 89th Air Wing; and Lisa Price, Lane's AFGE Union Representative. The Government moved to substitute the Air Force for these individual Defendants and to dismiss or, in the alternative for summary judgment on all of Lane's claims. In its Opinion and Order of July 29, 2005, the Court dismissed the individual Defendants and substituted the Air Force, and dismissed Lane's FTCA and Title VII claims.

---

[3] The Air Force's Motion for Summary Judgment and AFGE's Motion to Stay Scheduling Order are therefore MOOT.

[4] A NAFI "is a federal agency whose funds come primarily from its own activities rather than annual appropriations." *See Zimbelman v. Savage*, 228 F.3d 367, 369 (4th Cir. 2000).

However, the Court denied the Motion without prejudice as to Lane's due process and wrongful discharge claims and granted him leave to file an Amended Complaint to add AFGE as a party Defendant on these claims.  The Court reasoned that given Lane's allegations that the Union failed to adequately represent him in grievance procedures, these claims could be construed as claims for breach of contract (against both the Air Force and AFGE for breach of the Labor Management Agreement (LMA) between AFGE and the Commander of the 89th Air Wing) and breach of the duty of fair representation (against AFGE only).  Lane accepted the Court's invitation and filed an Amended Complaint.  The Amended Complaint, while not a model of clarity, alleges due process violations, wrongful discharge, and breach of contract against the Air Force; and breach of contract and the breach of the duty of fair representation against AFGE.[5]

The Air Force has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and in the alternative for summary judgment, arguing that the Court lacks subject matter jurisdiction over Lane's claims.  AFGE has moved to dismiss on the same grounds and, in the alternative, pursuant to Rule 12(b)(5) on grounds of insufficient process and service of process, and Rule 12(b)(6) on grounds that Lane has failed to state a claim upon which relief may be granted.

---

[5] In his Amended Complaint, Lane also states that he "does not agree to dismissing the original [individual] Defendants from litigation."  The Amended Complaint is hardly the proper place to raise this objection.  It appears that Lane did not oppose substitution of the Air Force for the individual Defendants when the Government originally moved for substitution.  Even if his objection was timely, it lacks merit.  Lane cannot refute the Government's certification that the individual Defendants were acting in the scope of their employment by merely asserting that these employees' actions were "egregious."  *See Borneman v. United States*, 213 F.3d 819, 827 ("[P]laintiff has the burden of persuasion 'to refute the certification of scope of employment issued by the Attorney General and to prove by a preponderance of the evidence that the defendants were not acting within the scope of their employment.'" (citation omitted)).

## II.

As an initial matter, the Court will treat the Air Force's Motion to Dismiss as a Motion for

Judgment on the Pleadings. The Motion to Dismiss, which was filed January 13, 2006, is untimely.[6]

Fed. R. Civ. P. 12(b) provides that a Motion to Dismiss "shall be made before pleading." The Air

Force filed its Answer to Lane's Amended Complaint on August 17, 2005. This defect is easily

cured. An untimely motion to dismiss can be treated as a motion for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c).[7] *See, e.g., Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

As a practical matter, treating the Motion as one for judgment on the pleadings makes no difference

---

[6] There is authority to the contrary. "[F]ederal courts have allowed untimely [12(b)] motions if the defense has been previously included in the answer." *Johnson v. Brickhouse*, 2003 U.S. Dist. LEXIS 2269, at *9 n.6 (S.D.N.Y. 2003); *see also* 5C Wright & Miller, Federal Practice and Procedure § 1361, at 93-94 (3d ed. 2004). Under this theory, the Air Force's Motion would be timely, since the defense of lack of subject matter jurisdiction was raised in both the Answer and the Motion to Dismiss. However, given the clear language of Rule 12(b), the Court does not see how a Motion to Dismiss filed after an Answer could ever be deemed timely. As such, the best course of action is to simply treat the Motion as one for judgment on the pleadings.

[7] While the Air Force has moved in the alternative for summary judgment, "[s]ince the granting of summary judgment is a disposition on the merits of the case, a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction." *Stanley v. CIA*, 639 F.2d 1146, 1157 (5th Cir. 1981) (citations omitted); *see also* 10A Wright, Miller & Kane, Federal Practice and Procedure § 2713, at 235-41 (3d ed. 1998). At least one court has held the same with respect to a motion for judgment on the pleadings, *see Ogle v. Church of God*, 2005 U.S. App. LEXIS 23666, at *8 (6th Cir. 2005), but the weight of authority holds that a motion for judgment on the pleadings is an appropriate vehicle for asserting that a court lacks subject matter jurisdiction. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *see also* 5C Wright & Miller, Federal Practice and Procedure § 1367, at 217. In the end, the issue is purely one of form, as "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court." *See Brickwood Contrs., Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004); *see also* Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

because the Court applies the same standards that it would to a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See, e.g., Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp. 2d 421, 426 (N.D.N.Y. 2005); *see also* 5C Wright & Miller, Federal Practice and Procedure § 1367, at 218.

A motion to dismiss based on lack of subject matter jurisdiction raises the question of whether the court has the authority or competence to hear the case. Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction. *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996). While the plaintiff bears the burden of proving subject matter jurisdiction properly exists in the federal court, *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999), the Court should only grant the 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

When a defendant brings a Motion to Dismiss based on both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), resolution of subject matter jurisdiction takes precedence because without that, the court does not have the authority to determine the adequacy of the claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95-96 (1998). Subject matter jurisdiction is a nonwaivable condition, therefore, if it is determined that the court lacks such jurisdiction, the case must be dismissed. *See Brickwood Contrs., Inc.*, 369 F.3d at 390; Fed. R. Civ. P. 12(h)(3).

### III.

Both the Air Force and AFGE argue that the Court lacks subject matter jurisdiction over Lane's claims because the Civil Service Reform Act (CSRA), 5 U.S.C. § 7101 *et seq.*, prohibits judicial review of his claims. The Court agrees. While Lane points to several bases for invoking

this Court's jurisdiction, all of them fail.[8]

The Court will address Lane's breach of contract, wrongful discharge, and due process claims against the Air Force first.  As a NAFI employee, Lane is in a somewhat peculiar position as regards the CSRA.  His employment relationship is governed by the CSRA, but he is excluded from its personnel scheme, i.e., he "is specifically *excluded* from the panoply of procedures [available to an ordinary civil servant] under CSRA."  *McAuliffe v. Rice*, 966 F.2d 979, 981 (5th Cir. 1992); *see* 5 U.S.C. § 2105(c); *Zimbleman*, 228 F.3d at 369.  While the CSRA affords ordinary civil servants greater protections in the administrative process, they generally cannot look outside the CSRA for relief from most types of personnel decisions.  *See United States v. Fausto*, 484 U.S. 439 (1988) (CSRA bars Back Pay Act claim); *Bush v. Lucas*, 462 U.S. 367 (1983) (no *Bivens* remedy available for employee governed by CSRA).

NAFI employees have frequently argued that their exclusion from the administrative protections of the CSRA means that they must be allowed to avail themselves of judicial remedies.  *See, e.g., Zimbleman*, 228 F.3d at 370; *McAuliffe*, 966 F.2d at 981.  Put differently, since Congress leaves ordinary civil servants without *judicial* remedies precisely because it provides them with *administrative* remedies under the CSRA, it could not have intended that NAFI employees *neither an administrative nor a judicial* remedy.  This argument seems especially powerful in this case,

---

[8] In his Amended Complaint, Lane asserts three grounds on which this Court has jurisdiction.  The first two do not require extended discussion.  First, he invokes diversity jurisdiction.  This fails because "[i]t is well established...that the United States is not a citizen for diversity purposes and that 'U.S. agencies cannot be sued in diversity.'"  *Commercial Union Ins. Co. v. United States*, 99 F.2d 581, 584 (D.C. Cir. 1993).  Second, he invokes 29 U.S.C. 1391(e)(1).  This fails because § 1391 governs venue–it does not confer jurisdiction. Third, he relies on 29 U.S.C. § 185, which provides a cause of action for the breach of a collective bargaining agreement.  As discussed at greater length in the text, this fails because § 185 applies only to private sector employees.

Case 8:04-cv-01051-PJM   Document 46   Filed 06/26/06   Page 7 of 10

where apart from the grievance process that Lane (unsuccessfully[9]) availed himself of, he was left

without a remedy.  However, courts have rejected this argument:

> The question before us is whether the exclusivity of the procedures set out in the CSRA, as emphatically confirmed in [*United States* v.] *Fausto*, [484 U.S. 439 (U.S. 1988], precludes... resort to [remedies outside the CSRA].  We believe they do.
>
> [I]t was never the intent of Congress that NAFI employees be entitled to the same levels of employment protection as are other federal employees. NAFI employees have been compensated from non-appropriated funds of such organizations as the Army & Air Force Exchange Service, which were set up by the armed forces to provide for the "comfort, pleasure, contentment, and mental and physical improvement of personnel of the armed forces...."  Pursuant to this law, Congress determined that NAFI employees "shall not be held and considered as employees of the United States for the purpose of any laws administered by the Civil Service Commission."  Congress reflected in this legislation the concerns of the Defense Department that civilian employment in such programs must be as flexible as possible and could not be accommodated within then-existing civil service-type protections.
> ....
>
> [I]n *Fausto*, the Supreme Court reviewed the history of the CSRA and concluded that Congress intended to supplant the hodgepodge of judicial remedies that had previously existed for various types of federal employees with the uniform gradation of review channels, culminating in some cases with appeal to the Federal Circuit. As a result, judicial review became foreclosed in certain areas where it had previously been deemed available, because Congress had determined to establish a comprehensive framework designed to "balance the legitimate interest of the various categories of federal employees with the needs of sound and efficient administration."  Accordingly, in *Fausto* the Court rejected the argument that Congress's silence indicated its assent to...pursuit of remedies outside the CSRA.

*McAuliffe*, 966 F.2d at 980.

---

[9] As the Fourth Circuit has made clear, "[i]t is not relevant that plaintiff[] believes the procedures governing [his] employment relations were insufficient."  *Zimbleman*, 228 F.3d at 371.  If Lane's allegations are true, these procedures may well have been insufficient.  As the Court detailed in its July 29, 2005 Opinion, Lane has pointed to specific provisions of the LMA governing grievance procedures that he alleges were violated.  He also alleges that AFGE completely failed to assist him the grievance process.  In short, while it appears that Lane "followed the strictures of the LMA to the letter...it appears that both the Union and the Air Force may not have."

The Fourth Circuit fully embraced this position in *Zimbleman*, where it held that the CSRA bars a NAFI employee from bringing a *Bivens* claim for violation of due process rights. *Zimbleman*, 228 F.3d at 371. While *Zimbleman* addressed only a *Bivens* claim, the Court has little doubt that it leaves no room for any statutory or common-law claim, i.e., no matter how Lane's claims are characterized, they are barred by the CSRA. Accordingly, the Court lacks jurisdiction over Lane's claims against the Air Force, and must dismiss them.[10] This may be a harsh result, but it is not for this Court to create a remedy where Congress has determined that one should not exist.[11]

Turning to Lane's claims that AFGE breached the LMA and the duty of fair representation, AFGE argues that this Court lacks jurisdiction because the CSRA provides the exclusive means by which Lane can seek redress for AFGE's alleged wrongful conduct.[12] The Court agrees.

The CSRA is the source of a Union's obligation to fairly represent employees for whom it is granted the exclusive right of representation. *See Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 531 (1989) ("5 U.S.C. § 7114(a)(1) provides that a labor organization that

---

[10] Because the Court concludes that the CSRA bars judicial review of Lane's claims against the Air Force, it need not address the Air Force's argument that his claims are barred by sovereign immunity.

[11] It seems particularly harsh in this case because it is doubtful that the apparent need for "flexibility" in employment relationships that the Fifth Circuit referred to in *McAuliffe* is implicated here. This Court does not see how affording an employee such as Lane, a bartender at an Officer's Club, greater due process protections, be they administrative or judicial, could disrupt the Air Force's mission. Nor is the Court convinced, as were the courts in *McAuliffe* and *Zimbleman*, that there were adequate procedural safeguards in the grievance process. *See McAuliffe*, 966 F.2d at 980; *Zimbleman*, 228 F.3d at 371.

[12] AFGE also argues that Lane failed to exhaust administrative remedies and filed his claims outside the statute of limitations–and thus that this Court lacks jurisdiction, that he failed to properly serve AFGE, and that he has failed to state a claim on which relief may be granted. Since the Court concludes that the CSRA bars judicial review Lane's claims against AFGE, it will not address any of these arguments.

has been accorded the exclusive right of representing employees in a designated unit 'is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.'  This provision...is the source of the collective-bargaining agent's duty of fair representation." (footnote omitted)).  However, the CSRA limits the procedures by which violations of the duty of fair representation may be remedied and severely restricts access to the courts:

> Title VII [of the CSRA] also makes it clear that a breach of the duty of fair representation is an unfair labor practice, for it provides that it is "an unfair labor practice for a labor organization...to otherwise fail or refuse to comply with any provision of this chapter."  Under § 7118, unfair labor practice complaints are adjudicated by the [Federal Labor Relations Authority (FLRA)], which is authorized to order remedial action appropriate to carry out the purposes of Title VII, including an award of backpay against either the agency or the labor organization that has committed the unfair practice.
>
> [Title VII] provides recourse to the courts in only three instances: with specified exceptions, persons aggrieved by a final FLRA order may seek review in the appropriate court of appeals, § 7123(a); the FLRA may seek judicial enforcement of its orders, § 7123(b); and temporary injunctive relief is available to the FLRA to assist it in the discharge of its duties, § 7123(d).

*Id.* at 532 (citation omitted).

As the Supreme Court explained in *Karahalios*, given the comprehensive remedial scheme that Congress has devised, there is no room for a private right of action for a union's breach of its duty of fair representation or breach of a collective bargaining agreement.  *Id.* at 536-37; *see also Andrews v. Principi*, 2003 U.S. Dist. LEXIS 19535, at *4 (M.D.N.C. 2003) ("[T]he CSRA does not permit judicial enforcement of collective bargaining agreements.").  Thus, this Court lacks jurisdiction over Lane's claims against AFGE.

Finally, 29 U.S.C. § 185 (§ 301 of the Labor Management Relations Act) offers Lane no help.  That provision authorizes actions in federal district court for enforcement of collective

bargaining agreements *in the private sector.*  Not only are federal employers specifically exempted from its coverage, *see* 29 U.S.C. § 152(2), but its analogue in the federal sector, the CSRA, does not include a like provision, *see Karahalios*, 489 U.S. at 536 ("Section 301 has no equivalent under [the CSRA]; there is no provision in that Title for suing an agency in federal court.").

While the Court concludes, as it must, that it lacks jurisdiction, a final word is in order. Although this Court cannot provide Lane a remedy where Congress has apparently determined that one should not be available, this does not suggest that the Court finds that he was treated fairly. That is a question that the Court cannot, and does not, reach.

## IV.

For the reasons stated above, the Court GRANTS the Air Force's Motion for Judgment on the Pleadings and AFGE's Motion to Dismiss.  The Air Force's Motion for Summary Judgment and AFGE's Motion to Stay Scheduling Order are MOOT.

A separate Order shall issue.

June 23, 2006                                                    _____/s/_____
                                                                           PETER J. MESSITTE
                                                                   UNITED STATES DISTRICT JUDGE